# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

NATIONAL STEEL CITY, LLC, :

    Plaintiff, :

vs. : CA 13-0272-KD-C

OUTOKUMPU STAINLESS USA, LLC, :
formerly known as THYSSENKRUPP
STAINLESS USA, LLC, :

    Defendant.

## ORDER

This cause is before the Court on plaintiff's motion for modification of the Rule 16(b) scheduling order regarding early mediation (Doc. 46) and the defendant's motion to compel/response in opposition to plaintiff's motion to amend scheduling order, or in the alternative, motion to dismiss or stay pending mediation (Doc. 47). Upon consideration of the contents of these pleadings, and all other pertinent pleadings in this file, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a) & (c)(1), and, for the reasons discussed below, the plaintiff's motion is **DENIED**.

## FACTUAL BACKGROUND

National Steel City filed this breach of contract and violation of the Alabama Prompt Pay Act action in this Court on May 22, 2013. (Doc. 1; *see also* Doc. 6 (amended complaint filed June 3, 2013 adds no other claims).) Outokumpu Stainless USA answered the amended complaint on June 24, 2013, and therein also asserted two counterclaims against the plaintiff. (*See* Doc. 10.) Significantly, Outokumpu counterclaimed that National Steel had itself breached the underlying contract and asserted as damages for plaintiff's failure to complete the work by the milestone dates

required by the contract liquidated damages in an amount equal to 8% of the total contract value, as well as the costs defendant had to pay other contractors as a result of plaintiff's alleged delays. (*See id.* at ¶¶ 7-15 & 26-33.)[1]

The parties filed their Rule 26(f) report on September 12, 2013. (Doc. 27.) That report reflects that counsel for parties conducted a planning meeting on August 28, 2013 (*id.* at 1), during which, according to the representations of one of the attorneys for plaintiff, a discussion was had regarding the identification of experienced mediators in complex construction cases. These representations by counsel for plaintiff were made during the Rule 16(b) scheduling conference conducted by the undersigned on September 25, 2013 (*see* Doc. 30) and this attorney further stated that within two to three weeks following the conference he believed that the parties could agree upon a mediator and calendar early mediation for December of 2013 or January of 2014.[2] Based upon the foregoing, the Court instructed the parties during the conference to follow-up with one another within thirty (30) days and set up mediation as soon as practicable in order to save money. Moreover, the undersigned advised the parties that should any questions arise in this regard, a conference call could be conducted. Finally, the undersigned memorialized the parties' expressed desire to conduct early mediation (*see* Doc. 27, ¶ 11 ("Settlement may be enhanced by use of mediation, which the parties have agreed to arrange and conduct, following a limited initial exchange of documents, not

---

[1] Plaintiff answered defendant's counterclaim on July 15, 2013. (Doc. 26.)

[2] As expressed during the scheduling conference, the defendant desired early mediation; however, plaintiff gave no indication that it in any way opposed early mediation of this complex case. Moreover, counsel for plaintiff was very forthcoming in agreeing with the Court that a mediator experienced with complex construction cases would be preferable with respect to early mediation, after counsel for the defendant suggested that it would agree to sitting down with the undersigned to discuss early settlement of this action.

2

later than **January 15, 2014**.")), by inserting in the September 27, 2013 Rule 16(b) scheduling order,[3] the following Paragraph 19.a.: "Early Mediation. The parties have specifically agreed to arrange and conduct a mediation conference in this matter not later than **January 15, 2014**, following an initial limited exchange of documents. The parties are encouraged to agree upon mediation by a neutral skilled in complex construction cases. The parties may venture outside this Court's panel of neutrals provided that the selected neutral agrees to comply with the ADR rules of this Court and files such acknowledgement." (Doc. 34, at 6.)

Of course, the foregoing paragraph is obviously not the sum and substance of the Court's Rule 16(b) scheduling order, as this order otherwise provides that the parties are to complete all "fact discovery . . . on or before **January 12, 2015.**" (Doc. 34, at ¶ 2.) Moreover, the order recognizes that each party can serve upon any other party a total of 30 interrogatories, 30 requests for admission, and 40 requests for production of documents, with responses due within 30 days of service. (*See id*. at ¶ 10.) The face of the docket sheet reflects that plaintiff filed notice of having served defendant Outokumpu with its first set of requests for production of documents on December 18, 2013. (Doc. 45.) The defendant's responses to plaintiff's propounded written discovery—if that discovery was properly propounded by plaintiff—are due on **January 20, 2014**, some five days after the early mediation deadline set forth in the Rule 16(b) scheduling order.

And while the parties have apparently had "issues" regarding the early mediation provision in the Rule 16(b) scheduling order for some time now (*see* Doc. 47,

---

[3] As noted in the scheduling order, the parties "exchanged the initial disclosures required by Fed.R.Civ.P. 26(a)(1) on **September 25, 2013**." (Doc. 34, ¶ 3, citing Docs. 31-32.)

Exhibits B-D & G), the Court was not put on notice of those issues until plaintiff filed its motion for modification of the Rule 16(b) scheduling order regarding early mediation on January 2, 2014 (Doc. 46). Therein, plaintiff now requests that the undersigned modify paragraph 19.a. of the Rule 16(b) scheduling order "to state that the parties will conduct a mediation conference in this matter not later than May 31, 2014, with no limitation on discovery of the parties prior to such mediation conference." (Doc. 46, at 3.) This motion further reads, in relevant part, as follows:

> 2. Prior to the filing of Plaintiff's Amended Complaint, NSC had only been informed by Defendant . . . of alleged offset, credits, and other deductive backcharges being asserted by OTK against NSC totaling less than $300,000.
>
> 3. OTK filed its Answer and Counterclaim [] in this matter on June 24, 2013. The counterclaim asserted by OTK in such pleading was for an unspecified amount.
>
> 4. OTK did not provide NSC with any information regarding the amount of OTK's counterclaim during the meeting of counsel that occurred on August 28, 2013.
>
> 5. OTK served its Initial Disclosures [] on NSC via U.S. Mail on September 25, 2013, which were received after the parties participated in the September 25, 2013 Rule 16(b) scheduling conference. OTK's Initial Disclosures allege that OTK's damages are, at a minimum, $10,298,406.00 and constitute the first notice given to NSC of a multi-million dollar counterclaim by OTK against NSC. OTK's Initial Disclosures do not provide any computation of its claimed damages.
>
> 6. Subsequent to the service of its Initial Disclosures, on October 31, 2013 OTK provided NSC with a one-page summary of the calculation of the OTK counterclaim damages in a revised amount of $7,184,935.00.
>
> 7. OTK filed its Amended Initial Disclosures [] on November 13, 2013. OTK's Amended Initial Disclosures claim that OTK's alleged damages are, at a minimum, the revised amount of $7,184,935.00. OTK's Amended Initial Disclosures do not provide any computation of its revised claimed damages.
>
> 8. Due to the lack of information regarding OTK's alleged damages comprising OTK's counterclaim, NSC needs to conduct discovery regarding such counterclaim prior to attending mediation if

4

such mediation is to have any reasonable likelihood of resolving this matter by agreement of the parties. Paragraph 19.a. of the Court's Scheduling Order states that early mediation will occur "following an initial limited exchange of documents." Neither Paragraph 2, Discovery Completion Date, nor Paragraph 10, Discovery Limits, of the Court's Scheduling Order contains any qualifications or limitations on conducting discovery prior to the occurrence of an early mediation conference. Because Paragraph 19.a. of the Scheduling Order might appear to preclude NSC from conducting regular discovery prior to January 15, 2014, NSC seeks an order from the Court providing clarification that there is no limitation on regular discovery prior to the occurrence of a mediation conference in this matter.

9. This case is currently set for trial in July 2015. NSC does not believe it can be adequately prepared to participate in a productive or meaningful manner in a mediation of this matter by January 15, 2014, or without the benefit of reasonable discovery prior to mediation.

(*Id.* at 1-3.) On January 6, 2014, Outokumpu filed a motion to compel/response in opposition to plaintiff's motion to amend scheduling order, or in the alternative, motion to dismiss or stay pending mediation. (Doc. 47.) There is no need for the undersigned to set out the defendant's response in detail herein, although reference has already been made to some of the attached exhibits and further reference may be made to this pleading as necessary in the legal analysis portion of this order.

## DISCUSSION

"Rule 16 of the Federal Rules of Civil Procedure authorizes the court to enter pretrial scheduling orders, which set dates for the completion of discovery, the hearing of dispositive motions, trial, and other matters." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003). The broad discretion set forth in Rule 16 "is necessary to preserve the integrity and purpose of the pretrial scheduling order and to allow the trial judge qualitative and quantitative management over a judicial proceeding from an early stage in order to reduce costs and delays." *Gavenda v. Orleans County*, 1996 WL 377091, *1 (W.D.N.Y. June 19, 1996) (footnotes omitted); *see Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("The district

5

court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion." (citation and internal quotation marks omitted)).

A Rule 16(b) scheduling order "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (citations omitted); *see also S & W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) ("The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'").[4] Thus, "[i]f the court finds that the party lacked due diligence, then the inquiry into good cause is ended." *United States ex rel. Walker v. R & F Properties of Lake County, Inc.*, 2008 WL 976786, at *2 (M.D. Fla. Apr. 9, 2008); *see also Axis Surplus Ins. Co. v. Innisfree Hotels, Inc.*, 2006 WL 2882373, at *4 n.9 (S.D. Ala. Oct. 6, 2006) (District Court affirming this Court's order denying a party's "formal request for a discovery extension [because of] an insufficient showing of due diligence and extraordinary circumstances").

Plaintiff's motion for modification of the Rule 16(b) scheduling order regarding early mediation is completely devoid of evidence or argument demonstrating its diligence in complying with the early mediation provision or in seeking to amend the

---

[4] "A 'scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril.'" *Lehman Brothers Holdings, Inc. v. Golden Empire Mortgage, Inc.*, 2010 WL 2679907, *2 (E.D. Cal. Jul. 2, 2010), quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

scheduling order once it became apparent it could not comply with the order regarding early mediation. (*See* Doc. 46.) Indeed, the motion—filed some thirteen (13) days before the deadline to conclude early mediation (Doc. 34, ¶ 19.a. ("The parties have specifically agreed to arrange for and conduct a mediation conference in this matter not later than **January 15, 2014,** following an initial limited exchange of documents."))—contains nothing other than evidence establishing plaintiff's lack of due diligence regarding the early mediation provision of the Rule 16(b) scheduling order. Despite early mediation being a prime topic of conversation during the September 25, 2013 Rule 16(b) scheduling conference and plaintiff's receipt (on September 25, 2013) of the defendant's initial disclosures alleging damages totaling $10,298,406.00,[5] plaintiff took no action to either facilitate early mediation or seek modification of the early mediation provision of the scheduling order until filing the instant motion on the eve of expiration of the pertinent deadline. Plaintiff failed to act despite the Court simply "tracking" the language contained in the parties' Rule 26(f) report (*see* Doc. 27, at ¶ 11 ("Settlement may be enhanced by use of mediation, which the parties have agreed to arrange and conduct, following a limited initial exchange of documents, not later than **January 15, 2014.**")) when the Rule 16(b) scheduling order was entered on September 27, 2013 (Doc. 34, ¶ 19.a. ("The parties have specifically agreed to arrange and conduct a mediation

---

[5] Plaintiff contends that its receipt of the defendant's initial disclosures on September 25, 2013 constituted the "first notice given to [it] of a multi-million dollar counterclaim by OTK against NSC." (Doc. 46, ¶ 5.) The undersigned finds this statement somewhat curious given Outokumpu's June 24, 2013 counterclaim for liquidated damages in an amount equal to 8% of the total contract value, as well as the costs defendant had to pay other contractors as a result of plaintiff's alleged delays (*see* Doc. 10), and plaintiff's clear statement in the Rule 26(f) report that at some point prior to the lawsuit being filed the contract sum had increased to "$22,106,039" (Doc. 27, at 2). Thus, it would appear to the undersigned that plaintiff knew at least three months prior to receipt of initial disclosures that defendant's counterclaim was of the multi-million dollar variety given that 8% of $22,106,039.00 is over 1.7 million dollars and plaintiff was aware before filing suit that Outokumpu was alleging "offset, credits, and other deductive backcharges" totaling approximately $300,000 (Doc. 46, at ¶ 2).

7

conference in this matter not later than **January 15, 2014,** following an initial limited exchange of documents.")[6]) and the undersigned making himself available to the parties regarding any problems arising over early mediation. Moreover, any "lack of information regarding OTK's alleged damages comprising OTK's counterclaim[]"would have been as apparent to plaintiff when the Rule 16(b) scheduling order was entered on September 27, 2013, as it was when National Steel City filed its motion for modification on January 2, 2014 (*see* Doc. 46, at 2-3). Accordingly, plaintiff's lack of due diligence ends the good cause inquiry and dictates the **DENIAL** of plaintiff's motion for modification of the Rule 16(b) scheduling order regarding early mediation (Doc. 46).[7]

Should plaintiff refuse to engage in early mediation prior to January 15, 2014, in the manner contemplated by the parties during their Rule 26(f) meeting on August 28, 2013 and the Court's Rule 16(b) scheduling order, *see Nick v. Morgan's Foods, Inc.,* 99 F.Supp.2d 1056, 1061 (E.D. Mo. 2000) ("When a party agrees to participate in a mediation process in good faith, the Court is entitled to rely on that representation. Implicit in the concept of good faith participation is the assurance that the parties will participate in ADR in accordance with the Court's order."), *order aff'd,* 270 F.3d 590 (8th

---

[6] In using this language, the undersigned meant simply to incorporate the parties' agreement reached in their August 28, 2013 meeting, without inquiring into the specifics of such agreement. In other words, whatever documents the parties agreed to exchange during that meeting prior to the early mediation are the documents that need be produced and if it was the parties' further agreement that no written discovery would be propounded prior to that early mediation, the undersigned expected when the Rule 16(b) scheduling order was entered, and still expects, that the parties would abide by the specifics of their August 28, 2013 agreement.

[7] The undersigned cannot fully appreciate why plaintiff is reticent to attend an early mediation at which it lacks information regarding defendant's "alleged damages comprising [its] counterclaim[]" (Doc. 46, at ¶ 8), since the mediator would likewise be without this information and be in a position to summarily reject any such claim for damages.

Cir. 2001),[8] all counsel *and their clients* are **ORDERED** to appear before the Court on **January 29, 2014**, at **10:00 a.m.,** in Courtroom 3A, United States Courthouse, Mobile, Alabama for a hearing in this matter, at which time the undersigned will consider all matters raised in the defendant's motion to compel/response in opposition to plaintiff's motion to amend scheduling order, or in the alternative, motion to dismiss or stay pending mediation (*see* Doc. 47). In lieu of such mandatory appearance, the parties can reach an alternative agreement regarding early mediation and advise the undersigned that a hearing is not necessary in light of such agreement; however, the parties are advised that any such agreement must also include discussion and resolution of the issue related to the written discovery propounded by plaintiff on December 18, 2013 (*see* Doc. 47, Exhibit E).[9]

**DONE** and **ORDERED** this the 8th day of January, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[8] However, "[g]ood faith participation in ADR does not require settlement. In fact, an ADR conference conducted in good faith can be helpful even if settlement is not reached." *Id*.

[9] If such written discovery was properly propounded by plaintiff, the defendant's responses to that discovery are due on **January 20, 2014**, some five days after the early mediation deadline of January 15, 2014. Thus, any agreement by the parties regarding a "rescheduled" early mediation need also contemplate that the written discovery propounded by plaintiff need not be answered prior to the "rescheduled" early mediation date.